Argued December 3, decided December 23, 1913.

Ex Parte STEINER.*

(137 Pac. 204.)

Constitutional Law—Master and Servant—Due Process of Law—Equal Protection of the Law—Privileges of Citizens—Labor Law.

1. Laws of, 1913, page 90, declaring eight hours a day's labor in all cases of labor employed by the state or its auxiliaries, either directly or through the agency of a contractor, is not violative of Article I, Section 20, of the Constitution, prohibiting laws granting to any citizen or class of citizens privileges which, upon the same terms, shall not equally belong to all citizens, nor of the fourteenth amendment of the Constitution of the United States, prohibiting states from abridging the privileges and immunities of citizens of the United States, or denying due process of law or equal protection of the laws.

[As to constitutionality of statute limiting length of day's labor, see note in Ann. Cas. 1912D, 393. As to statutory restriction of hours of labor on public work, see note in Ann Cas. 1912A, 773.]

*The question as to what employers are within statute limiting hours of labor is discussed in a note in 42 L. R. A. (N. S.) 1031.

On the question of the validity of limitation of hours of labor on public work, see notes in 8 L. R. A. (N. S.) 131; 24 L. R. A. (N. S.) 201; 34 L. R. A. (N. S.) 767.                REPORTER.

Master and Servant — Regulation of Hours of Service — States — "Labor."

2. In Laws of 1913, page 90, declaring eight hours a day's labor in all cases where labor is employed by the state, county, etc., "labor" is used in its broadest sense, as comprehending all persons employed by the state or its auxiliaries, whether skilled or unskilled, and includes the engineer of the heating plant at the State Hospital.

Master and Servant—Hours of Service—States—Criminal Responsibility.

3. Laws of 1913, page 91, Section 6, making it a misdemeanor for any contractor, subcontractor, or agent, or persons whatsoever in authority or in charge, to violate the provisions of the act, which fix eight hours as a day's labor for the state or its auxiliaries, includes the superintendent of the Oregon State Hospital among those criminally responsible for violation of the act.

This is an original application by R. E. Lee Steiner for a writ of *habeas corpus*. DENIED.

For petitioner there was a brief over the name of *Messrs. McNary, Smith & Shields,* with an oral argument by *Mr. Roy F. Shields.*

For the state there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. James W. Crawford,* Assistant Attorney General, and *Mr. Charles E. S. Wood,* with oral arguments by *Mr. James W. Crawford* and *Mr. Wood.*

En Banc. MR. JUSTICE McNARY delivered the opinion of the court.

This is an original application in this court for a writ of *habeas corpus*. On October 31, 1913, O. P. Hoff, Labor Commissioner of Oregon, filed two criminal complaints in the justice's court for Salem district, Marion County, Oregon, charging R. E. Lee Steiner, superintendent of the Oregon State Hospital, with the violation of the provisions of Chapter 61 of the General Laws of Oregon, for 1913. In one of the complaints the superintendent is charged with having employed and required one W. L. Davis to perform

labor on October 29, 1913, as a farm hand at the asylum farm, for more than eight hours. In the other complaint, the accused is alleged to have employed and required one Morton Mortesen to perform labor as an engineer at the same time and place, for a period of time in excess of eight hours. Seasonably following the arrest of Mr. Steiner, he applied to this court for a writ of *habeas corpus,* assigning as reasons therefor that: "There is no law within the state making the acts complained of illegal, and that Chapter 61, of the Laws for 1913, does not apply to laborers employed by the state," and for that account the justice of the peace had no jurisdiction to issue the warrants of arrest.

The material provisions of the statute, including the title of the act, under which the petitioner is prosecuted, reads:

"An act * * defining the duties of state officials in awarding and carrying out contracts; declaring eight hours to be a day's labor in all cases where the state or any county, school district, municipality or division is concerned, and prescribing a penalty for violation of the law.

"Section 1. Every contract made with the state, county, school district, municipality, municipal corporation or subdivision shall contain a condition that * * no person shall be employed for more than eight hours in any one day, or forty-eight hours in any one week, unless in case of emergency when no other competent labor is available, and in such cases such laborer shall be paid double wages for all overtime."

"Sec. 4. In all cases where labor is employed by the state, county, school district, municipality, municipal corporation, or subdivision, either directly or through another, as a contractor, no person shall be required or permitted to labor more than eight hours in any one day, or forty-eight hours in any one week, except in cases of necessity, emergency, or where pub-

lic policy absolutely requires it, in which event the person or persons so employed for excessive hours shall receive double pay for the overtime so employed; and no emergency, necessity, or public policy shall be presumed to exist when other labor or like skill and efficiency which has not been employed full time is available.

"Sec. 5. Eight hours shall constitute a day's labor in all cases where the state, county, school district, or any municipality, municipal corporation or subdivision is the employer of the labor, either directly or indirectly, by contract with another.

"Sec. 6. All contractors, subcontractors, or agents, or persons whatsoever in authority or in charge, who shall violate the provisions of this act as to the hours of employment of labor as herein provided, shall be deemed guilty of a misdemeanor and upon conviction shall be fined in a sum of not less than fifty dollars nor more than one thousand dollars, or with imprisonment in the county jail for a period of not less than five days nor more than one year, or by both such fine and imprisonment, in the discretion of the court."

1. The first and by far the most serious question presented by counsel for petitioner involves the constitutionality of the statute which attempts to limit the hours of laborers, employed by the state or its auxiliaries, either directly or through the agency of a contractor. The validity of the statute is challenged upon the ground of an alleged violation of the fourteenth amendment of the Constitution of the United States, which inhibits a state from enacting any law which will abridge the privileges and immunities of citizens of the United States, deprive any person of life, liberty, or property without due process of law, or deny to any person within its jurisdiction the equal protection of the law. Also, the statute is assailed as being in contravention of Article I, Section 20, of the state Constitution which provides: "No law shall be

passed granting to any citizen or class of citizens, privileges * * which, upon the same terms, shall not equally belong to all citizens.''

An examination of the several provisions of the statute, and of the record on appeal, discloses that no question can here arise concerning the power of the legislature to pass a law limiting the hours of labor in purely private work in which the public has no concern. That question we have now no occasion to consider. Confessedly, the legislative enactment has application only to a laborer employed directly or indirectly by the state, or by one of its political agencies. The Constitution of our state does not reveal any express or implied restriction upon the power of the law-making body to determine the maximum number of hours an employee may either be required or permitted to labor for the state, or its agencies of government.

The state has undoubted power to prescribe for itself such rules of conduct as it deems best suited for the particular work in which it is engaged. It may dictate rules for its own guidance which would be intolerable if applied to private persons in the prosecution of their own activities. But that situation cannot enter into a legal estimate of the statute, or be considered in applying the rules by which its constitutional measure must be taken, as matters of that nature only provoke considerations of public policy with which the courts have no concern. By the legislative act in question the state simply declares that no person shall be permitted or required to perform labor for it, or for any of its administrative agencies, more than eight hours in a calendar day, and that none need apply who desire longer hours of employment. To the contractor of state work, it says no one can work for you in excess of eight hours in a day. No barrier is placed about a laborer preventing him from seeking employ-

ment elsewhere. His liberty of selection is not interfered with, nor his right to labor frustrated. Any individual may, with propriety, declare a policy not to employ within the line of his undertaking any person for a longer period of time than eight hours in a day, or any other unit of time that might appeal to his altruism, and direct his agent to observe that regulation. And by parity of reason, the state, speaking through the legislature, may, with equal fitness, inaugurate a rule of conduct not to work its employees more than eight hours a day, and legally direct its instrumentalities of government faithfully to observe such mandate. The terms of the employment are by this statute publicly proclaimed, and if a person insists upon working more than the hours limited by the act, he must seek elsewhere the engagement of his labor.

In the case of *United States* v. *Martin*, 94 U. S. 400 (24 L. Ed. 128), in passing upon an act of Congress declaring that eight hours shall constitute a day's work, for laborers, workmen, or mechanics employed by or on behalf of the government, the court said:

"We regard the statute chiefly as in the nature of a direction from a principal to his agent that eight hours is deemed to be a proper length of time for a day's labor, and that his contracts shall be based upon that theory. It is a matter between the principal and his agent, in which a third party has no interest."

A careful dissection of this statute warrants the conclusion that the act does not transgress upon any rights vouchsafed, either by the federal or state Constitution, and that the objections which are urged against the law involve matters of political expediency with which the law-making bodies of the state alone are concerned, and to which institutions only may an appeal for correction be made. Indeed, we think the law applicable to this case was settled by the Supreme Court of the United States in the excellently consid-

ered case of *Atkin* v. *Kansas,* 191 U. S. 207 (24 Sup.
Ct. Rep. 124, 48 L. Ed. 148), wherein Mr. Justice
HARLAN, speaking for the court, in part said:

"We can imagine no possible ground to dispute the
power of the state to declare that no one undertaking
work for it, or for one of its municipal agencies, should
permit or require an employee on such work to labor
in excess of eight hours each day, and to inflict punish-
ment upon those who are embraced by such regula-
tions, and yet disregard them. It cannot be deemed a
part of the liberty of any contractor that he be allowed
to do public work in any mode he may choose to adopt,
without regard to the wishes of the state. On the
contrary, it belongs to the state, as the guardian and
trustee for its people, and having control of its affairs,
to prescribe the conditions upon which it will permit
public work to be done on its behalf, or on behalf of its
municipalities. No court has authority to review its
action in that respect. Regulations on this subject
suggest only considerations of public policy. And
with such considerations the courts have no concern.
If it be contended to be the right of everyone to dis-
pose of his labor upon such terms as he deems best—
as undoubtedly it is—and that to make it a criminal
offense for a contractor for public work to permit or
require his employee to perform labor upon that work
in excess of eight hours each day is in derogation of
the liberty both of employees and employer, it is suffi-
cient to answer that no employee is entitled, of abso-
lute right and as part of his liberty, to perform labor
for the state; and no contractor for public work can
excuse a violation of his agreement with the state by
doing that which the statute under which he proceeds
distinctly and lawfully forbids him to do."

A case of striking analogy to the one in mind is
*In re Dalton,* 61 Kan. 257 (59 Pac. 336, 47 L. R. A.
380). We are not unmindful of an impressive num-
ber of cases, the leading one of which is *Lochner* v.
*New York,* 198 U. S. 45 (49 L. Ed. 937, 25 Sup. Ct. Rep.

539, 3 Ann. Cas. 1133), that hold those legislative acts unconstitutional which attempt to regulate the right of free contract upon the part of the individual, either as employer or employee. But in our view of the law, that situation does not here present itself. We conclude on this phase of the case that Chapter 61, General Laws of Oregon for 1913, is a mere declaration of policy on the part of the state and its political subdivisions, and does not conflict either with the Constitution of the United States or of this state.

2. The other proposition suggested by counsel for petitioner is whether the engineer of the heating plant at the State Hospital is a laborer within the meaning of the enactment. The statute plainly employs the term "labor" in its widest sense, as reference to Section 4 of the act will denote: "In all cases where labor employed by the state, county, school district, municipality, municipal corporation or subdivision * * no person shall be required or permitted to labor more than eight hours. * * " Section 5 reads: "Eight hours shall constitute a day's labor in all cases where the state, etc., is the employer of the labor." Had the legislature intended to use the word "labor" in a restricted sense, or with reference to a special class of endeavor, a qualifying word or phrase would have been used in connection with the term. The language of the statute is comprehensive, and includes all persons who perform labor for the state or its auxiliaries, whether that labor is skilled or unskilled, so long as the character of the work comes within the definition of the term "labor." Labor is defined in Bouvier's Law Dictionary, volume 2, page 95 (Rawle's Rev.) as, "work requiring execution or effort, either physical or mental; toil."

In the case of *Stryker* v. *Cassidy*, 76 N. Y. 50 (32 Am. Rep. 262), the question arose whether an archi-

68 Or.—15

tect employed by the owner to superintend the erection of a house was entitled to lien for his services. As an act of the legislature authorized a lien to be created in favor of ''any person who shall perform any labor * * by virtue of a contract with the owner,'' the court held that the services of the architect were encompassed within the word ''labor,'' and held the lien to be valid: *Knight* v. *Norris et al.,* 13 Minn. 473 (Gil. 438) ; *Sleeper* v. *Goodwin,* 67 Wis. 577 (31 N. W. 335).

Considered in the glow of these precedents, we find no other alternative than to declare that the duties of the engineer came within the embrace of the word ''labor'' as used in the statute.

3. As a final reflection, it will be observed that the statute designates in Section 6 those individuals who may be punished for an infraction of the law as ''all contractors, subcontractors, or agents, or persons whatsoever in authority, or in charge.'' The language employed is sufficiently general to embrace within its fold all persons in charge of a public undertaking, whether acting in the capacity of a contractor, subcontractor or agent, or in the position of one having authority over or in charge of the work.

Indubitably the language of the act, as well as its aim and purpose, is to place the responsibility of a faithful observance of the law upon those individuals who have charge of the labor in a given public work, thereby reducing to a minimum the wrong which the legislature deemed the statute would correct. By the record, it is admitted that petitioner is the superintendent of the Oregon State Hospital, and as such employs laborers on behalf of and as agent of the state, and was acting in that capacity at the time of the transgressions laid in the criminal complaints. Truly the petitioner comes within the statute, and is responsible for a violation thereof.

The writ will be denied and the petitioner remanded to the custody of the law.          WRIT DENIED.

MR. JUSTICE MOORE not sitting.

MR. JUSTICE BURNETT delivered the following dissenting opinion.

The legislative assembly at its twenty-seventh regular session enacted a law with this title: "To protect subcontractors, materialmen, and laborers performing labor for the state or any municipality or subdivision; requiring a sufficient bond to protect the state from liens; defining the duties of state officials in awarding and carrying out contracts; declaring eight hours to be a day's labor in all cases where the state or any county, school district, municipality, or division is concerned, and prescribing a penalty for violation of the law." After a section providing that every contract made with the state, or any county, school district, or municipality therein shall be conditioned, among other things, that no person shall be employed for more than eight hours in any one day or forty-eight hours in any one week, except in cases of emergency when no other competent labor is available, etc., Section 4 reads thus: "In all cases where labor is employed by the state, county, school district, municipality, municipal corporation, or subdivision, either directly or through another, as a contractor, no person shall be required or permitted to labor more than eight hours in any one day, or forty-eight hours in any one week, except in cases of necessity, emergency, or where public policy absolutely requires it, in which event the person or persons so employed for excessive hours shall receive double pay for the overtime so employed; and no emergency, necessity, or public policy shall be presumed to exist when other labor of like skill and effi-

ciency which has not been employed full time is available."

Section 6 is as follows: "All contractors, subcontractors, or agents, or persons whatsoever in authority or in charge, who shall violate the provisions of this act as to the hours of employment of labor as herein provided, shall be deemed guilty of a misdemeanor and upon conviction shall be fined in a sum of not less than fifty dollars nor more than one thousand dollars, or with imprisonment in the county jail for a period of not less than five days nor more than one year, or by both such fine and imprisonment, in the discretion of the court."

Operating under this act, one O. P. Hoff, on October 31, 1913, filed an information under oath before a magistrate of Marion County, charging that "R. E. Lee Steiner, defendant above named, was at all times herein mentioned, and is now the duly appointed, qualified, and acting agent and superintendent of the Oregon State Hospital of the State of Oregon, and as such employs laborers to perform labor for and on behalf of the State of Oregon. That said R. E. Lee Steiner in Marion County, Oregon, on the 29th day of October, 1913, then and there being, did then and there, as agent and superintendent of the Oregon State Hospital of the State of Oregon, have in his employ W. L. Davis, and did then and there as such superintendent and agent require and permit the said W. L. Davis to then and there perform labor for the State of Oregon, as a laborer on the asylum farm, more than eight hours during the twenty-four which constitutes the said day; that the said W. L. Davis was not then and there employed in a case of necessity or emergency, or where public policy absolutely required it, and that there was then and there laborers of like skill and efficiency as the said W. L. Davis, who had not then and there employed their full available time." Upon this informa-

tion the magistrate issued a warrant, under which the constable with whom it was lodged took custody of the petitioner here.   Like proceedings were had upon an information filed by the same party with respect to an engineer.   Thereupon the defendant in the information applied to this court by an original petition for a writ of *habeas corpus,* and the constable has made a return setting forth the information and warrant under which he is acting.   The question arises upon demurrer to the return.

It may be conceded that the state can exercise reasonable legislative power in declaring conditions and hours of labor affecting its own employees, and that the statute in question is effective for the purpose of incorporating into every contract the conditions named in the statute.   That, however, is not all the issue involved.   The direct question to be determined here is whether the statute imposes upon the petitioner a duty, the violation of which will constitute a crime. In its supposed aspect as a criminal statute this law is subject to the rule declared by Mr. Justice PRIM in *State* v. *Mann,* 2 Or. 255: ''A crime or public offense is some act forbidden by law; and it is a well-settled rule of law that no one can be punished for doing an act, unless it clearly appears that the act sought to be punished comes clearly within both the spirit and letter of the law prohibiting it.   The act constituting the offense should be clearly and specially described in the statute, and with sufficient certainty, at least, to enable the court to determine, from the words used in the statute, whether the act charged in the indictment comes within the prohibition of the law.'' *

In *Cook* v. *State,* 26 Ind. App. 278, 281 (59 N. E. 489, 490), the doctrine is thus laid down: ''The language of a criminal statute cannot be extended beyond its reasonable meaning, and, wherever the court entertains a reasonable doubt as to the meaning, the doubt

must be resolved in favor of the accused. The court must expound what it finds written, and cannot import additional meaning without sufficient indication thereof in the words of the statute, with such aids thereto as the established rules of law authorize."

In *Rohlf* v. *Kasemeier*, 140 Iowa, 182 (118 N. W. 276, 132 Am. St. Rep. 261, 17 Ann. Cas. 750, 23 L. R. A. (N. S.) 1284), the court says: "It must be remembered that the word is found in a criminal statute, and that in the interpretation of such statutes different rules apply from those which obtain in civil matters, or where contracts are involved. Nothing is to be added to such statutes by intendment, and, as a rule, they are to have a strict construction": See, also, *State* v. *Dailey*, 76 Neb. 770 (107 N. W. 1094); *Daggett* v. *State*, 4 Conn. 60 (10 Am. Dec. 100); *Austin* v. *State*, 71 Ga. 595; *State* v. *Fisher*, 53 Or. 38 (98 Pac. 713).

Referring to the language of Section 4, we find that "no person shall be required or permitted to labor more than eight hours in any one day." It would appear from this language that a person who labored more than eight hours without permission would thereby violate the law. No one besides the employee is mentioned in the inhibition of the section, and for the purposes of criminal prosecutions we cannot include persons not named therein. The language of this section, as well as that of Section 6, is purely impersonal. It is not stated in the law who shall have power to require or permit anyone to labor. In other words, no direct limitation is placed upon anyone having authority over labor, the violation of which limitation would constitute a crime. What constitutes a violation of the statute under Section 6 is not defined. No act constituting a crime is described in the statute with the certainty required by the rule established in *State* v. *Mann*, 2 Or. 255. It is left to inference and speculation. No citizen ought to be adjudged guilty

of a crime or deprived of his liberty on mere implication or strained construction. As a criminal statute, the enactment is void for uncertainty.

Moreover, the terms of that section are directed against "all contractors, subcontractors, or agents, or persons whatsoever in authority or in charge who shall violate the provisions of this act." Under well-known rules of statutory construction, these terms, being associated together, must mean substantially the same thing, so that, construing this section in favor of a defendant liberally as the rule requires, it is fair to say that it refers only to contractors and those standing in the same class. Taking the whole act together, it manifestly applies to contracts made with the state, or some municipal corporation therein, and at best provides a penalty only for the violation of the terms of such agreements.

Again, if the matter is to be affected by the authority of someone to require or permit an employee to labor, much light may be thrown upon the situation by consulting the act of February 21, 1913 (Laws 1913, pp. 119, 121). This act creates what is known as the Oregon State Board of Control, consisting of the Governor, Secretary of State, and State Treasurer. By that act the board of control is vested with authority over the Oregon State Insane Asylum, thereafter to be known as the Oregon State Hospital. Section 3 confers upon the board "full authority and exclusive government, direction and supervision over the several institutions enumerated in Section 2 of the act." That section, after conferring upon the board authority to appoint superintendents, provide by-laws, prescribe the duties of the executive heads of the several institutions, and to suspend or discharge them or their subordinates, fix the salaries of all officers and employees, contract for supplies and betterments, exercise the power of eminent domain, take, receive, and

hold property of all kinds, etc., closes with these words: "And to do and perform all legal and peaceful acts requisite and necessary for the successful management and maintenance of said institutions." It would thus appear that the board has all authority, short of the power to declare martial law, in the management of the institutions and the employees; for we find that it is restricted to "all legal and peaceful acts requisite and necessary." The conclusion is plain that, so far as the statute discloses, it is the board alone which has authority to require or permit labor for more than eight hours in one day. The defendant, himself an employee, cannot be in a statutory situation, either to permit or require extra service within the meaning of the law, and ought not to be made the scapegoat of those who employ him.

The prisoner should be discharged.