[Criminal No. 796. Filed April 25, 1934.]

[31 Pac. (2d) 888.]

STATE, Appellant, v. GEORGE H. ANKLAM, JAY C. HICKS and W. R. DENISON, Respondents.

Mr. Arthur T. La Prade, Attorney General, Mr. John Francis Connor, Assistant Attorney General, and Mr. Clarence E. Houston, County Attorney, for the State.

Mr. R. G. Darrow, for Respondents.

Mr. Emil Wachtel, *Amicus Curiae.*

ROSS, C. J. — The defendants, constituting the board of supervisors of Pima county, were informed against in the superior court of said county by the county attorney for failure to pay Roy Jones, a janitor and common laborer performing manual labor for said county, the minimum wage fixed by the state highway commission for such labor, in that the said defendants paid said Jones for fourteen days' labor, of eight hours each, in August, 1933, the sum of $47.50, whereas the wage fixed by the state highway commission for common labor was 50 cents per hour, or $56 for fourteen days of eight hours each.

Two of the defendants, Anklam and Hicks, demurred to the information on the ground that it failed to state facts sufficient to constitute a public offense, and they now contend and argue that the law under which the information was drawn is unconstitutional and void, in that it contains no ascertainable standard of guilt; is vague, indefinite and uncertain; provides no notice or method for giving notice to an employer of what minimum wage may be fixed by the state highway commission; and subjects the employer to the arbitrary whim of such commission, permitting it without notice to him to change the minimum wage and expose him to criminal liability for failure to comply with requirements of which he has no knowledge or means of knowledge. The demurrer was sustained, and the information dismissed. The state has appealed.

The only question is the one raised by the demurrer, and that is whether the statute describes the offense with sufficient certainty to advise or inform an employer of the acts, the commission or omission of which would make him answerable to a criminal prosecution. The statute defining the offense is section 1350, Revised Code of Arizona 1928, as amended

by section 1, chapter 12, Laws Regular Session 1933, reading as follows:

*"Hours of Labor on Public Work; wages.* Eight hours, and no more, shall constitute a lawful day's work for all persons doing manual or mechanical labor employed by or on behalf of the state, or of any of its political subdivisions, except in an extraordinary emergency, in time of war, or for the protection of property or human life; in such cases the persons working to exceed eight hours each day shall be paid on the basis of eight hours constituting a day's work. Not less than the minimum per diem wages fixed by the state highway commission for manual or mechanical labor performed for said commission or for contractors performing work under contract with said commission, shall be paid to persons doing manual or mechanical labor so employed by or on behalf of the state or of any of its political subdivisions. Persons doing manual or mechanical labor employed by contractors or sub-contractors in the execution of any contract with the state, or with any of its political subdivisions, shall be deemed to be employed by or on behalf of the state, or of such political subdivision thereof."

Before this section was amended, it provided that all persons doing manual or mechanical labor for the state or any of its political subdivisions should receive for their labor "not less than the current rate of per diem wages in the locality where the work is performed." In *State* v. *Jay J. Garfield Building Co.,* 39 Ariz. 45, 3 Pac. (2d) 983, 984, we held, following the Supreme Court in *Connally* v. *General Construction Co.,* 269 U. S. 385, 46 Sup. Ct. 126, 70 L. Ed. 322, that the "current rate of per diem wages in the locality where the work is performed" was not susceptible of determination by any known rule, because, first, "locality" is boundless and indefinite; and, second, that the "current rate of per diem wages" might be anything from the minimum up to and including the maximum wage. We did, however,

in that case state that the power of the legislature to fix hours of labor and the minimum wages of employees of the state and its political subdivisions was unquestioned.

This general statement of the legislature's power we again affirm, except as to matters of municipal or local concern of cities with freeholders or home rule charters voted and approved under sections 2 and 3, article 13, of the state Constitution.

When the Eleventh Legislature met in January, 1933, the members thereof were in possession of the facts concerning the Minimum Wage Law, and the ruling of the court thereon, and with such knowledge they wrote and passed the amended section. There is, then, absolutely no question about what the legislature wanted and tried to do, and to accomplish its purpose it provided that the minimum wages for manual and mechanical labor fixed by the state highway commission should be paid certain kinds of employees of the state and its political subdivisions.

The primary rule of construction of statutes is that the court, if possible, should give effect to the intention of the legislature. Another rule of universal application is that a court should approach a legislative act on the assumption that it is valid and constitutional and should uphold it if not satisfied beyond a reasonable doubt that it is invalid.

The state highway commission is one of the largest institutions of the state, employing hundreds of men in all kinds of labor incident to road building and paying wages scaled according to the grade or character of labor. Its operations are statewide, and its employees grade from common laborers to highly skilled engineers. One might therefore well regard the state highway commission's scale of wages for manual and mechanical labor to be a just and fair criterion for fixing wages for the state employees

and the employees of its political subdivisions. At all events, that is what the legislature did.

But it is said the language of section 1350 as amended authorizes the state highway commission to fix a minimum wage for its employees and to fix another minimum wage for employees of contractors performing work under contract for the commission. We can hardly conceive of the state highway commission so construing the statute. But, suppose it should conclude that its employees and employees of contractors performing contracts for it should receive a different wage, and accordingly adopt two scales of wages for the same type of labor, an employer paying wages of either schedule would comply with the law. Or, should the state highway commission's construction be that the intention of the legislature was that it should fix a uniform wage for like services, whether the labor was directly for the commission or for persons working for contract employers, the payment of the scale so fixed would certainly obviate criminal liability. The information alleges the wages were fixed by the state highway commission at 50 cents per hour for common labor.

It is further claimed that the law is unenforceable for vagueness, in that it fails to prescribe when the state highway commission should meet and fix wages, or any change of wages, of employees of the state and the political subdivisions thereof; or to provide notice to employers of the scale of wages so fixed or changed. It is argued that an employer could never know the wages fixed by the commission, or, if he did to-day, to-morrow the commission could change the wages and convert him into a criminal without his knowledge.

The answer to these suggestions is ready at hand. In the first place, all an employer has to do is to inquire of the state highway commission whether it has fixed a minimum per diem wage for the class of

manual or mechanical labor he proposes to employ and if it has pay such wage to his employees. If it has not fixed such minimum per diem wage, he may, without incurring criminal liability, pay his employees such wages as they may agree upon. Or, if he is paying the wages fixed by the commission, and such wages should be changed without his knowledge, and he should be arrested for not complying with the change, he could defend on that ground. It would be a question of fact whether he knew of the change or not. It is true that the mere doing of an act forbidden by statute in some kinds of cases makes out the crime, but, where the criminality of the act is made to depend upon a rule or order of the state highway commission or other agency, the person charged with its violation should be permitted to show that he did not knowingly do so.

The right and power of the legislature to delegate to the state highway commission authority to fix minimum wages for manual and mechanical labor when performed for the state and its political subdivisions is well settled. In 6 Ruling Case Law, page 181, section 181, it is said:

"While the legislature cannot delegate to a board or to an executive officer the power to declare what acts shall constitute a criminal offense, it is competent for it to authorize a commission to prescribe duties on which the law may operate in imposing a penalty and in effectuating the purpose designed in enacting the law. . . . In a case where the statute itself prescribes punishment for violation of a regulation of a board or commission, it cannot be said that it is unconstitutional on the theory that legislative power to create crimes is delegated to such body. A specific illustration of the application of this principle is presented where it is held that legislative power delegated to the secretary of agriculture by the provisions of the forest reserve act, making criminal the violation of the rules and regulations cover-

ing forest reservations made and promulgated by him under authority of such statutes, is constitutional.'' See, also, *Metropolitan Water District* v. *Whitsett*, 215 Cal. 400, 10 Pac. (2d) 751; *Ex parte Steiner*, 68 Or. 218, 137 Pac. 204; *Byars* v. *State*, 2 Okl. Cr. 481, 102 Pac. 804, Ann. Cas. 1912A 765.

The legislative adoption of a minimum wage fixed by the state highway commission, to be paid by the state and its political subdivisions for manual and mechanical labor, is not a surrender of legislative power to the highway commission. The law operates upon a fact to be ascertained by the highway commission and itself creates the crime.

It is the well-settled rule that:

''A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another.'' *State* v. *Jay J. Garfield Bldg. Co., supra.*

An employer of manual or mechanical labor for the state or its political subdivisions can under the above statute, by exercising ordinary intelligence and care, choose in advance what is lawful for him to do. In other words, he should have no trouble in ascertaining the per diem wage he should pay. His course is plain and easy to follow. He can make no mistake if he will use his wits. The statute prescribes a definite certain standard of conduct, and' he can have no legitimate reason for not observing it.

The state as an employer of labor, speaking through its legislature, has in no uncertain language determined upon a policy of guaranteeing a minimum

per diem wage to certain of its employees. At its 1933 Regular Session, the legislature not only amended section 1350, *supra,* to that end, but also passed chapter 71, making it obligatory upon the state, county, and municipal agencies to incorporate in every contract for public works a provision requiring a contractor to pay his employees the prevailing rate of per diem wages for each craft or type of workman or mechanic needed. It is, of course, the duty of the courts to take notice of such policy and, if it is clearly and fairly expressed and not vulnerable to constitutional attack, uphold it. Such policy is in harmony with the National Recovery Act (48 Stat. 195), and has for its object the promotion of public peace and the general welfare. It is in accord with national legislation, and many of the states of the Union have passed acts fixing minimum wages for common labor.

"In recent years the legislatures of many states have become impressed with the belief that unskilled laborers are compelled to accept employment for inadequate wages. They have accordingly provided that unskilled laborers employed on the public work of the state or municipalities shall receive not less than a specified amount per hour or per day." 16 R. C. L. 497, § 68.

Defendants have cited many cases which under the facts therein have decided against laws attempting to define crimes, the elements of which were not ascertainable in advance, but they are not applicable here, for the reason that the statute under which defendants are being prosecuted plainly and clearly informs them what they may do to avoid criminality. We do not deem it necessary to discuss such cases except to say they were correctly decided upon the facts.

The information states a public offense, and it was error to sustain the demurrer.

The judgment is reversed and the case remanded, with directions that further proceedings be had in accordance with this opinion.

LOCKWOOD and McALISTER, JJ., concur.