CASE 106.—ACTION BY THE LINCOLN INSTITUTE OF KEN-
            TUCKY AGAINS1 THE COLUMBIA TRUST COM-
            PANY.—June 17, 1910.

## Columbia Trust Co v. Lincolr. Institute of Ky.

Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

SHACKELFORD MILLER, Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1.    Constitutional Law—Personal Liberty—Enjoyment of Proper
      ty.—Any law which seeks arbitrarily to deprive a domestic co
      poration organized under Ky. St. sections 879-883, to establis
      and maintain an industrial school for colored people, of th
      right to use its property in any way it sees fit within i
      chartered powers not inimical to the public welfare, is viol
      tive of   Const. Bill of Rights, sections 1, 2, 26, guaranteeir
      the inalienable rights of men to enjoy their liberties, and
      acquire and protect property, etc.
2.    Schools and School Districts—Establishment of Schools—F

Columbia Trust Co. v. Lincoln Institute of Ky.

lice Power.—A statute which prohibits or which authorizes the voters of a precinct to prohibit the establishment of an industrial school where farming or any other trade is taught cannot be sustained as an exercise of the police power, since education is promotive of the public welfare.

3.    Schools and School Districts—Regulation of Schools—Police Power.—The legislature under the police power may regulate education in many respects, and it may prohibit the mingling of white and colored children in the same schools, or in schools of immediate proximity.

4 .    Corporations—Charters—Amendments.—A statute making it unlawful for a corporation to operate an industrial school without first obtaining the consent of the majority of the voters in the precinct where the school is proposed to be operated cannot be  sustained, as an  amendment to  the charter of a corporation organized under  Ky. St.  sections 879-883, to establish and maintain an industrial school for the colored people of the state.

5.    Statutes—Local Laws—Classification.—A statute making it unlawful to maintain an industrial school without first obtaining the consent of the majority of the voters in the precinct where the school is to be maintained, but exempting from its provisions cities of the first, second, third, and fourth classes, is violative of Const. section 60, prohibiting local laws.

6.    Constitutional Law—Delegation of Legislative  Power.—The statute making it unlawful to maintain an industrial school without the consent of the majority of the voters in the precinct where the school is to be maintained makes the establishment of an industrial school by a corporation organized under Ky. St. sections 879-883, to maintain schools for colored people, to depend on the votes of the citizens of the precinct, where the school is proposed to be established, and is violative of Const. section 60, prohibiting the enactment of the laws to take effect on the approval of any other authority than the legislature.

BRADLEY & BASKIN for appellant.

HUMPHREY & HUMPHREY and ALEX G. BARRETT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE BARKER—Affirming.  .

The sole question arising for adjudication upon this record is the constitutionality of an act of the General Assembly of the Commonwealth of Kentucky, commonly known as the "Holland bill," and which is as follows:

An Act to Regulate the Establishment of Industrial Schools.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"Section 1. That it shall be unlawful for any person, company, corporation or association to own, control, operate or maintain any industrial school, college or institute where farming or any other occupation, trade, profession or calling is taught or sought to be taught, in its course of study or instruction where such person, company, corporation or association owns, operates or controls exceeding seventy-five acres of land unless said person, company, corporation or association shall obtain the consent of a majority of the legal voters residing in the voting precinct where such school is to be maintained or operated in the manner hereinafter provided.

"Sec. 2. Before any such school, college or institute shall hereafter commence operation the person, company, corporation or association owning or controlling said school shall apply to the judge of the county court of the county wherein said school, college or institute is located or sought to be located or operated for permission to operate, conduct or maintain such school, college or institute, and thereupon it shall be the duty of the said county judge to call an election in the voting precinct wherein such school, college or institute is located or sought to be located, operated or maintained for the purpose of taking the

sense of the legal voters residing in said precinct upon the question of whether or not such school, college or institute shall be located, operated or maintained in said voting precinct, and in the event a majority of the legal voters in said voting precinct, voting upon said proposition, shall vote for the granting of said permission, then the said county judge shall grant same, but if the vote in said voting precinct be against granting such permission, then said county judge shall not grant such permission.

"Sec. 3. When application for such permission is filed with the judge of the county court of the county wherein such school, college or institute is sought to be located, operated or maintained, said judge shall call an election to be held between the hours of six o'clock a. m. and four o'clock p. m. on a date to be fixed by him, giving notice thereof by at least twenty written or printed notices posted in conspicuous places in said precinct for at least forty days prior to the date fixed for said election, and the board of election commissioners for such county shall appoint the officers of election to hold said election in such precinct where a vote is ordered, which officers shall be two judges, one clerk and one sheriff, whose duties and qualifications shall be the same as those serving in a general election; and said election officers shall certify the result of the vote within three days to the board of election commissioners of said county, who shall canvass the returns and certify the result to the county judge of said county. All expenses for said election to be paid by the applicant for such permission.

"Sec. 4. Any person, company, corporation or association who shall own, operate, control or maintain any such school, college or institute without procuring

the permission hereinbefore set out shall be fined one hundred dollars for each and every day such school is so owned, operated, controlled or maintained.

"Sec. 5. The provisions of this act shall not apply to cities of the first, second, third or fourth class or to those schools, colleges and institutes already built and in actual operation for a period of one year before the passage of this act.

"Sec. 6. All laws and parts of laws in conflict with this act are hereby repealed.

"This act shall take effect from the date of its passage."

The question arose as follows: The appellee, Lincoln Institute of Kentucky, is a charitable corporation organized under the laws of the Commonwealth of Kentucky, with power to establish a normal and industrial school for colored people. For the purposes for which it was organized, it has an endowment of some $400,000, which is held, in part, at least, by the Columbia Trust Company as its trustee. The appellee purchased a tract of land in Shelby county, Ky., of about 444 acres, upon which it proposes to erect the necessary buildings and to place the necessary implements and apparatus, and to inaugurate and maintain a normal and industrial school for colored people, in accordance with the purposes for which it was organized, and demanded of its trustee enough of the funds held by it to pay for the land so purchased. With this request the appellant refused to comply, for the reason that the provisions of the Holland bill had not been complied with, and that it would be unlawful to establish the school at the place selected without first complying with the provisions of the statute. A general demurrer to this answer was interposed and sustained, and, the defendant re-

fusing to plead further, a judgment was rendered in accordance with the prayer of the petition; and of this the appellant complains. It being admitted that the appellee has failed to comply with the provisions of the Holland bill, it follows that, if that act is valid, the position of the appellant is sound, and the judgment should be reversed; on the other hand, if the act is unconstitutional, then the judgment of the trial court must be affirmed.

In order that the purposes and aims of the appellee corporation may be more fully understood, we insert herein the preamble and the first four articles of its constitution:

"Preamble.—In order to promote the cause of Christ we, the undersigned, hereby associate ourselves, and our successors, to form a corporation under the provision of article VIII, chapter 32 of the Kentucky Statutes, and adopt the following articles:

"Article 1.—Name. This institution shall be called the Lincoln Institute of Kentucky and located in Shelby county, nine miles west of Shelbyville, with such adjunct institutions as may be established in any any other parts of the commonwealth.

"Art. II. Object. The object of this institute shall be to furnish thorough Christian education in as many departments as resources permit, with special attention to the training of teachers. and instruction in industrial pursuits, and with all possible adaptation to the educational needs of the colored people of this state.

"Art. III. Christian Character. This institute shall endeavor to exert through all its departments and officers an influence distinctly Christian, but in the employment of officers and teachers, no sectarian test shall be applied, and no one Christian body shall

be allowed to preponderate in the list of trustees or teachers.''

The primary question with which we are confronted is: May the General Assembly of the Commonwealth of Kentucky prohibit the institution and maintenance of such a school as appellee? We say, may the General Assembly prohibit, because it is manifest that, if the legislative power may be exercised in such a way as to authorize the voters of a precinct to prohibit the establishment of such an institution, clearly the Legislature may itself prohibit it.   For the appellant it is maintained that the act in question is a valid exercise of the police power of the state, and for the appellee it is contended that it is an exercise of mere arbitrary power, in violation both of the Constitution of the state of Kentucky and and the Constitution of the United States. To the solution of this question we will now address ourselves.

Section 1 of the Bill of Rights is as follows: ''All men are, by nature, free and equal, and have certain inherent and inalienable rights, among which may be reckoned: (1) The right of enjoying and defending their lives and liberties.   * * *   (3) The right of seeking and pursuing their safety and happiness.   * * * (5) The right of acquiring and protecting property.

''Sec. 2. Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority.''

''Sec. 26. To guard against transgression of the high powers which we have delegated, we declare that everything in this Bill of Rights is excepted out of the general powers of government, and shall forever remain inviolable; and all laws contrary thereto, or contrary to this Constitution, shall be void.''

The Lincoln Institute is a legally constituted cor-

poration, having power and authority, among other things, under its charter, to acquire and hold property and to use it for the purpose of establishing such a school as it seeks to establish in Shelby county. Undoubtedly, it will be admitted at once that any law which seeks arbitrarily to deprive the appellee of the right of using its property in any way it sees fit, which is not inimical to the public welfare, is contrary to the provisions of the Bill of Rights above quoted, and therefore void. And we do not think it will be controverted that, unless it can be shown that the establishment of such an institution as the one under consideration is in some way inimical to the public safety, the public health, or the public morals, the act which forbids its operation is an exercise of arbitrary power. In other words, the act in question must find its justification in the police power of the state, or it must be declared to be invalid.

In the case of Commonwealth v. Fowler, 96 Ky. 171, 28 S. W. 787, 16 Ky. Law Rep. 362, 33 L. R. A. 839, this court said: "Every one has the right to follow an innocent calling without permission from the government. He may do with his own whatever he pleases, so that he injure no one else. We agree with learned counsel that 'the doctrine of legislative permission, as a condition precedent to the conduct of any useful or harmless business, is grossly repugnant to those obvious principles of human right which lie at the foundation of just government among men.' So, then, without governmental interference or consent, we say the farmer may till his soil, the merchant may buy and sell, the lawyer and doctor practice their professions, and the druggist and pharmacist compound their medicines."

In the case of Commonwealth γ. Bacon, 13

Bush, 210, 26 Am. Rep. 189, there was involved the validity of a statute which provided that it should be unlawful for any one, without the consent of the directors of the Bourbon County Agricultural Society, to open a lot, stable, shed, or other place during the continuance of the society's fairs for the purpose of receiving, for pay, horses or vehicles of any kind, or for any person or persons to permit the use of his lot, stable, shed, or place for any such purposes. Among other things, this court said in the opinion holding the act invalid: "The effect of the act then is to restrict the right of one person to use and enjoy his property in a particular manner that another may use his in that manner to greater profit than he could if each was left free to use his own as he pleased. In this country, where the right of the citizen to acquire, hold, and enjoy property is guaranteed by the fundamental law, it would seem that the statement of the proposition is enough to refute it."

It is useless to multiply authorities on so obvious a proposition. If the teaching of the young to be useful, upright, Christian citizens is not inimical to the public safety, public morals, or the public health, then it must follow that an act which seeks either to prohibit it altogether or to authorize others to prohibit it must be invalid. It is difficult to find language to make plainer that which is so obvious as is the proposition before us. The purposes of the institution under discussion include the whole circle of the solid virtues with which youth may be endowed. Undoubtedly, it is a substantial good to educate the youth of the state; and such is the declared policy of the Constitution. Section 183 provides: "The General Assembly shall, by appropriate legislation, provide for an efficient system of common schools

throughout the state.'' It cannot, then, be in any way
injurious to the public to aid in forwarding the great
educational policy which the people themselves have
declared in their fundamental law—the giving of
every young man and woman in the commonwealth
a sound education.    And, when academic education
is supplemented by religious training and special in-
struction in the agricultural and mechanical arts and
sciences, it seems to us that it is contrary to the most
obvious public policy that an institution which af-
fords such an education should be in any way blocked
or impeded.   What good reason can be given for pro-
hibiting the exercise of such a charity as that which
we have under discussion, unless it can be shown that
education, supplemented by religious training, may
be in some way an evil to society?   Does not the mind
of every virtuous and right-thinking person at once
admit that the contrary is true?   Do we not know
that religious educational training has a tendency to
make men more industrious, more virtuous, and bet-
ter, generally, morally and physically?    In other
words, better, wiser, and more useful citizens.   What
would be thought of an act which prohibited the farm-
er from cultivating a piece of land of greater extent
than 75 acres without the permission of his neigh-
bors?   By what argument could an act be supported
which prohibited a manufacturer from working more
than a given number of artisans?   And yet it is ser-
iously contended that a school which seeks to make re-
ligious, upright, educated citizens may be prevented
under the police power of the state as    a    public
nuisance.

Education strengthens the mind, purifies the heart,
and widens the horizon of thought.   It magnifies the
domain of hope, multiplies the chances of success in

life, and opens wide the door of opportunity to the poor as well as to the rich. It makes men better husbands, better fathers, and better citizens. It is not doubted that the Legislature, under the police power, may regulate education in many respects. It may prohibit the mingling of white and colored children in the same schools, or in schools of immediate proximity. Perhaps, it may be within the police power to prohibit coeducation of the sexes, or to in any other reasonable way regulate the mere manner of educating the youth of the state; but to arbitrarily prohibit education is in direct violation of the Bill of Rights above quoted. In the case of Berea College v. Commonwealth, 123 Ky. 209, 94 S. W. 623, 29 Ky. Law Rep. 284, 124 Am. St. Rep. 344, it was held that, while it was within the power of the Legislature to prohibit the voluntary mingling of white and colored students in the same schools, it was not within its competency to prohibit schools for white and colored students from being conducted within 25 miles of each other; it being there held that such a prohibition was an arbitrary exercise of power, which could not be upheld in a constitutional form of government. So, in the case before us, no good reason can be given for either prohibiting or impeding in any way the institution and maintenance of the school is involved in this litigation. The principle here announced is upheld and maintained in Boyd v. City of Frankfort, 117 Ky. 197, 77 S. W. 669, 25 Ky. Law Rep. 1311, 111 Am. St. Rep. 240, where it was held unconstitutional to prohibit by ordinance the right of a colored congregation in Frankfort to erect a church building and carry on therein services of Christian worship, and, in Tilford v. Belknap, 126 Ky. 244,

103 S. W. 289, 31 Ky. Law. Rep. 662, 11 L. R. A. (N. S.) 708, where it was held that an ordinance of the city of Louisville was unconstitutional, in that it prohibited the erection of a frame building within 60 feet of a stone or brick building without the consent of the owner of the latter.

We conclude, then, on this branch of the case, that religious and scientific education, instead of being in any wise injurious or dangerous to the public safety, morals, health or welfare, on the contrary, is promotive of public virtue, intelligence, and good citizenship, and is therefore to be desired and promoted rather than prohibited or impeded; and, this being true, the act under discussion, which puts it within the power of the voters of any precinct to prohibit the establishment of such a school as that contemplated by appellee, is unconstitutional, and therefore void. Nor can the act be upheld as an amendment to the charters of such corporations as appellee. It is true that one branch of the case of Berea College v. Commonwealth of Kentucky was affirmed on a writ of error to the Supreme Court of the United States (211 U. S. 45, 29 Sup. Ct. 33, 53 L. Ed. 81) upon this principle, but that doctrine was repudiated by our own court on another branch of the case which was decided in favor of the college, and therefore not appealed from. In that case, as said above, we held that so much of the "Day act" (Acts 1904, c. 85) as prohibited the conducting of schools for white and black students within 25 miles of each other was illegal, and therefore invalid; and this could not have been done under the principle that even an invalid act may be upheld as an amendment to the charter of the complaining corporation. If that principle had prevailed in our court, then the Day

act would have been upheld in both branches. We adhere to the principle announced by us in Berea College v. Commonwealth of Kentucky on this branch of the case.

The act under consideration is also in violation of section 60 of the Constitution, which, in so far as pertinent to the subject in hand, is as follows: "The General Assembly shall not directly enact any special or local act by the repeal in part of a general act, or by exempting from the operation of a general act any city, town, district or county. * * * No law, except such as relates to the sale, loan or gift of vinous, spirituous or malt liquors, bridges, turnpikes or other public roads, public buildings or improvements, fencing, running at large of stock, matters pertaining to common schools, paupers, and the regulation by counties, cities, towns, or other municipalities of their local affairs, shall be enacted to take effect upon the approval of any other authority than the General Assembly, unless otherwise expressly provided in this Constitution." The act in question exempts cities of the first, second, third and fourth classes from its provisions. In other words, what purports to be a general law is made special by exempting from its provisions the first four classes of the cities of the Commonwealth. It also makes the establishment of such a charity as appellee to depend, not upon the legislative authority, but upon the votes of the citizens of the precinct wherein the school is proposed to be established. In the case of Droege v. McInerney, 120 Ky. 796, 87 S. W. 1085, 27 Ky. Law Rep. 1137, an act of the General Assembly establishing a county board of election commissioners was held to be invalid because it excepted from its provisions cities of the second class, and in Western

and Southern Life Insurance Co. v. Commonwealth, 117 S. W. 376, an act of the General Assembly, which made the tax on foreign insurance companies in this state to depend upon the amount of the tax assessed against similar corporations in their home states, was held to be in violation of section 60 of the Constitution because its operation was made to turn upon an authority other than that of the Legislature of this state. These two cases are conclusive as to the invalidity of the act because contrary to the provisions of section 60 of the Constitution.

We are therefore of opinion that the act in question is unconstitutional, first, because it is an exercise of arbitrary power and contrary to those provisions in the Bill of Rights above cited; and, second, that it is invalid because contrary to the provisions of section 60 of the Constitution. The judgment of the chancellor, so holding, must be affirmed; and it is so ordered.