**HILTON v BOARD OF EDUCATION OF EDEN TOWNSHIP et**

Ohio Appeals. 3rd Dist, Seneca Co

No 251.   Decided Oct 11, 1935

Robert C. Carpenter, Tiffin, Paul R. Ebel, Tiffin, for plaintiff.

Frick & Abbott, Tiffin, Heath K. Cole, Tiffin, and Paul A. Flynn, Tiffin, for defendants.

## OPINION

By GUERNSEY, J.

The contentions of the plaintiff will be discussed in the order mentioned.

1. In 44 Corpus Juris, page 1224, paragraph 4202, it is stated:

"The execution of municipal bonds may preclude their sale and delivery, and bonds

are issued, not when they are executed, but when they are delivered, that is, when possession and control thereof pass from the municipality to the donee or purchaser or some person in whose hands they become a claim or charge against the municipality; even though executed, the bonds do not become operative and obligatory unless and until they are delivered."

Sec 2293-13 GC provides in part:

"An indebtedness shall not be deemed to have been created or incurred until the delivery of the bonds or notes under contract of sale."

Applying the foregoing rule and statute to the facts in the case at bar, we hold that the bonds in contemplation of law were not issued until the delivery of the same was made to the purchaser on June 21, 1935, at which time the grant agreement between the Board and the United States of America was in full force and effect, and that consequently the bonds were issued in conformity with and not contrary to the provisions of §5 of Amended Senate Bill No. 38 hereinbefore referred to.

Second. It is contended by the plaintiff that the provisions of House Bill No. 544 which was passed as an emergency measure and approved June 7, 1935, are expressly made retroactive so as to apply to the election held on the question of issuing such bonds in November, 1934, and that as the question of issuing such bonds was approved by the affirmative vote of less than sixty-five per cent of those voting upon the proposition, such vote was insufficient to authorize the issuance of such bonds, although at the time such election was held the affirmative vote of only a majority was required for the issuance of such bonds.

The specific provision on which the plaintiff relies as to making the provisions of House Bill No. 544 retroactive as applied to the election appears in §1 of said bill and reads as follows:

"This section as amended shall apply to all bond legislation enacted, passed and pending prior to and subsequent to the effective date of this amendment; and to all elections either regular or special held for the purposes of issuing bonds outside existing debt and tax limitations to enable municipal corporations and other subdivisions of Ohio to participate in federal aid as provided by the 'National Industrial Recovery Act', the 'Federal Emergency Relief Act' and the 'Emergency Relief Appropriation Act of 1935'."

It will be noted that the part of the paragraph quoted, preceding the semicolon applies to bond legislation enacted, passed and pending prior to and subsequent to the effective date of the amendment; and the part of the paragraph following the semicolon refers to elections held for the purpose of issuing bonds, and does not in terms purport to apply to elections held prior to the effective date of the amendment. An election to authorize the issuance of bonds is not a part of the bond legislation, the bond legislation consisting only of the legislative acts of a school board in connection with the issuance of bonds. In the paragraph above referred to the legislature treats bond legislation and elections held for the purpose of issuing bonds, as two separate subject matters, the application of the provisions of the House Bill being expressly made retroactive as to bond legislation and not being made retroactive as to elections held for the purposes of issuing bonds.

Under the rule of construction of statutes provided in §26 GC, there being no express provision making House Bill No. 544 retroactive as to elections, the provisions with reference to elections are prospective and not retroactive. As the provisions of House Bill No. 544 as applied to elections are not retroactive, the affirmative vote cast in favor of the proposal to issue bonds being sufficient when the election was held, continues to be sufficient and the result of the election is not invalidated by the provisions of said House Bill.

3. Sec 3 of Article VI of the Constitution provides as follows:

"Provisions shall be made by law for the organization, administration and control of the public school system of the state supported by public funds. * * *"

Under this provision the legislature has power to establish school districts and to provide for their government and administration by such boards or officers as the legislature may deem advisable, and to confer such legislative and administrative powers on such boards or officers as it may deem essential. Under this authority the legislature had constitutional power to confer on the board of education of a school district power to legislate with reference to the construction of school buildings, the issuance of bonds therefor and the terms and conditions upon which contracts for the construction of such school buildings should be let, including the hours of labor and the minimum wages to be paid, and so

far as we have been able to find this power has never been questioned. Included in this power is the power of the legislature to provide as a limitation on the power conferred on a board of education that the rate of wages to be fixed by the board shall not be less than the prevailing scale.

It is not the delegation of power by the legislature to an executive but is only the authorized delegation of legislative power by the state legislature to a subordinate legislative body established by it for the government of a political subdivision, and is similar to the power conferred by the legislature on city and village councils to legislate within prescribed limits for such political subdivisions. As the power is conferred on a subordinate legislative body it is not essential to the validity of the power granted for the legislature to fix standards for the fixing of wages and hours. This power exists independent of the provisions of **Article II, §34 of the Ohio Constitution** authorizing the passage of laws fixing and regulating the hours of labor, establishing the minimum wage, and providing for the comfort, health, safety and general welfare of all employees, but is in conformity with the spirit of this constitutional provision.

Sec 17-4, GC, conferring power on any public authority authorized to contract for public improvements to fix and determine a fair rate of wages to be paid by the successful bidder, is a valid legislative enactment authorized by the constitution and is not unconstitutional.

4. The fourth contention of the plaintiff relates to the claimed failure of the board to comply with the provisions of §17-4, GC, requiring "Rate of wages so fixed shall be printed on the bidding blanks."

In the case at bar a blank entitled "A bidding blank" is incorporated with other papers in a folder under a binding. Among the papers incorporated in the folder is a notice to bidders showing the maximum working hours, minimum wage rates adopted by the board and there is also a schedule setting up this maximum hour and wage rates.

The legislative purpose in providing that rate of wages fixed should be printed on the bidding blanks was to advise prospective bidders of the fixing of such wages. This purpose was fully accomplished by incorporating the rates of wages in the folder with the bidding blank.

In determining whether the provisions of the statute are mandatory or directory "It is the duty of courts of justice to try to get at the real intention of the legislature by carefully attending to the whole scope of the statute to be construed." Lewis'

Sutherland Statutory Construction, Second Edition, Vol. 2, page 1115.

"Unless a fair consideration of a statute directing the mode of proceeding of public officers, shows that the legislature intended compliance with the provision in relation thereto to be essential to the validity of the proceeding, it is to be regarded as directory merely. Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory."

Lewis' Sutherland Statutory Construction, Second Edition, Volume 2, page 1116.

Applying these rules of construction to the statute in question, it is clear that the provision mentioned is directory rather than mandatory, and that even if mandatory there has been a substantial compliance with the provision, and consequently this contention of the plaintiff is without merit.

None of the contentions of the plaintiff being meritorious we therefore find on the issues joined for the defendant at costs of plaintiff, and a decree will be entered accordingly.

KLINGER, PJ, and CROW, J, concur.