# Young v. Willis.

June 17, 1947.

W. B. Ardery, Judge.

Wilbur Fields for appellant.

Eldon S. Dummit, Attorney General, and Ben B. Fowler, Assistant Attorney General, for appellee.

Geo. C. Burton for Ky. State Federation of Labor, amicus curiae.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

This appeal is from a judgment sustaining a demurrer to a petition filed by the appellant, the effect of which is to uphold the constitutionality of the Wage and Hour Law as to women and minors, KRS 337.210 to 337.410.

Appellant is engaged in the dry cleaning business in Lexington and is an employer of women and minors. He maintains that the authority granted by this act is a delegation of legislative authority by the General Assembly in violation of sections 60 and 59(29) of the Kentucky Constitution. In this action he asks for a declaration of rights which would invalidate the above-

mentioned sections of the act, and that the Commissioner of Industrial Relations, the appellee herein, be ordered to withdraw a mandatory minimum wage order affecting the laundry and dry cleaning industry.

The purpose of the act in question is clearly stated in KRS 337.210 which provides that any contract for employment of any woman or minor at an oppressive or unreasonable wage is void as against public policy. KRS 337.010(3) (d) defines "oppressive and unreasonable wage" as a wage that is both less than the fair and reasonable value of the services rendered and less than sufficient to meet the minimum cost of living necessary for health. By KRS 337.220 the Commissioner is directed to make an investigation of wages being paid to women or minors to ascertain whether any substantial number of them are receiving oppressive and unreasonable wages. If, on the basis of information in his possession, he believes that an essential number of them are receiving oppressive and unreasonable wages, he must request the Governor to appoint a Wage Board to establish fair wages. In establishing any minimum fair wage both the Commissioner and the Wage Board must take into account the cost of living and all other relevant circumstances affecting the value of the service or class of service rendered, and "shall consider the wages paid in the state for work of like or comparable character by employers who voluntarily maintain minimum fair wage standards." KRS 337.230. The act then determines the procedure involved in the actual establishment of a minimum wage, which procedure includes a public hearing to be held by the Commissioner, at which any person may indicate his attitude toward the proposed minimum wage order. KRS 337.250(2).

In addition to the public hearings provided for, the act permits any person who is aggrieved by an order of the Commissioner to seek a review thereof by the courts. KRS 337.310. Penalties are provided for violations of any minimum wage order.

We have had many occasions to consider the question of the delegation of legislative authority, but have been directed to no case where the facts are parallel to the facts in this one. Appellant has cited several cases from this jurisdiction which he considers as determina-

tive of the question involved here, but these cases are. valuable only for the purpose of ascertaining the test which must be applied to this act in order to determine its validity.

In Commonwealth v. Beaver Dam Coal Co., 194 Ky. 34, 237 S. W. 1086, 27 A. L. R. 920, we held that an act of the legislature which would become effective only upon the vote of a given percentage of employees in a specified business was in violation of section 60 of our Constitution. Under that act, no matter what conditions or facts existed, the law would not become effective unless the vote of the employees made it so. There we pointed out that there is a clear-cut distinction in acts of the legislature which will become operative where certain prescribed conditions exist, and acts which do not take effect, though all prescribed conditions exist, until and unless some affirmative action is taken by a body or group other than the legislature. In the latter class of acts, their effect and operation depends not upon the discretion of the legislature but upon the the discretion of another, and this is exactly the thing that is prohibited by section 60 of the Constitution.

Following this same line of reasoning we invalidated an act relating to mine operations which would become effective only upon approval by the chief inspector of mines. Anderson's Adm'r v. Granville Coal Co., 205 Ky. 111, 265 S. W. 472, and to the same effect see Columbia Trust Co. v. Lincoln Institute, 138 Ky. 804, 129 S. W. 113, 29 L. R. A., N. S., 53.

In Bloemer v. Turner, 281 Ky. 832, 137 S. W. 2d 387, 391, we recognized that the legislature cannot deal with subordinate rules or cover the details of administration and execution of its regulatory enactments, and that these must be left to the agency upon which the duty of carrying out the legislative will is placed. There we admitted the difficulty of discerning the distinction between legislative and administrative functions, or, to state it differently, between the power to make laws and the power to make regulations within the scope of legitimate delegated authority. We stated the true distinction to be: "The legislature can not delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which

the law makes, or intends to make, its own action depend.''

In this modern age administrative boards and commissioners have become an essential part of our governmental structure. Agencies must of necessity be established through which the state must function, and such agencies must be given discretion in administering the law and promulgating detail rules and regulations. However, in the establishment of such administrative boards and agencies the legislature must establish the principles and policies, and leave to such agencies only the details of administration.

In Keller v. Kentucky Alcoholic Beverage Control Board, 279 Ky. 272, 130 S. W. 2d 821, 824, we said: ''There is no constitutional objection to the exercise of such discretionary power as ascertaining facts and administering the law.''

In our opinion the act under consideration lays down policies and establishes standards by which the Commissioner and the Wage Board must abide. It is true that the Commissioner is clothed with a power which involves the exercise of discretion and judgment, but the granting of this discretion to the Commissioner does not necessarily mean that the discretion amounts to the use of a legislative power. Although the legislature may not divest itself of its function to determine what the law shall be, it may authorize others to do things which it might properly, but cannot understandingly or advantageously do. It is obvious that the legislature cannot deal with the details of each particular case that may arise under this act, and therefore it must necessarily leave such details to the reasonable discretion of the agents charged with the enforcement of its law. This act directs the Commissioner to act under certain circumstances, and gives him a reasonable guide to follow, both in requesting the appointment of a Wage Board and in the fixing of the minimum rates. The act fixes a standard for the Commissioner to follow in exercising the discretion granted him. Should he depart from the standard fixed in the act the courts may be resorted to for relief. It is not to be assumed that the Commissioner will exercise the discretion given him in an arbitrary manner since in considering the constitu-

tionality of any act it must be assumed that the officials involved will act in accordance with the provisions of the law.

Appellant also insists that the act violates section 59(29) of the Constitution. A law is not special or local solely because it does not relate to the general public. It may relate to a special class or a special locality if the facts reasonably differentiate that class or locality from the general public or from the state at large. Connors v. Jefferson County Fiscal Court, 277 Ky. 23, 125 S. W. 2d 206. In this act the legislature made the cost of living an element in the determination of a fair minimum wage, and it is common knowledge that there is a wide discrepancy between the cost of living in different localities in this Commonwealth. The General Assembly undoubtedly realized this when it made it possible for the Commissioner and the Wage Board to consider and act on facts which establish the differences in the various localities.

We think the act under consideration fairly states the subject, nature and extent of its operation. It declares its policy and prescribes standards for the guidance of the administrative agency. We think these standards are such that the courts and the public can ascertain whether the Commissioner, in the performance of his duties, has conformed thereto. This being true there was no failure of the performance of the legislative function.

The judgment appealed from is in accord with the views herein expressed and it is therefore affirmed.