### Baughn et al. v. Gorrell & Riley et al.

June 24, 1949.

Rehearing denied December 9, 1949.

538

Norris Vincent for appellants.

G. Sam Milam and Byron, Sandidge & Holbrook for appellees.

CLAY, COMMISSIONER—Reversing.

Appellants filed this suit against the Daviess County Board of Education (hereinafter referred to as "Board") and a contractor engaged in the reconstruction of a school building at West Louisville. The principal objects of the suit were to cancel the contract between the Board and the contractor, and to require the Board to comply with KRS, Chapter 337 in ascertaining and fixing prevailing rates of wages for the work to be performed. Other persons were made parties to the suit, and by later pleadings, a declaration of rights was asked. The contractor raised the question of the constitutionality of the statute involved. The lower Court adjudged the statute unconstitutional, and declared the contract valid and binding.

While a number of incidental questions were raised and decided in the Court below, the only issue we deem it necessary to decide on this appeal is the constitutional one. Before discussing the question, it is necessary to briefly outline the situation which led to this controversy.

Because of the destruction of a grade and high school building at West Louisville in Daviess County

in August 1948, the Board decided upon its reconstruction. Bids were advertised for, and on February 17, 1949, the Board awarded the basic contract to the contractor. Shortly thereafter work was begun on the new building and was continued until May 2, 1949. On that date the site was picketed by labor union representatives, and those employed by the contractor walked off the job. Since that date construction has been suspended. The present suit was filed May 10, 1949.

The controversy arose because the Board had failed to comply with KRS 337.510, which directs it to ascertain prevailing rates of wages before advertising for public construction bids, and requires it to make a part of the specifications for the work a schedule of wages based on these ascertained prevailing rates. The record indicates the contractor is paying certain classes of labor lesser rates than those prevailing for similar work in the city of Owensboro, which is located some fourteen miles from the site of the building. For this reason appellants requested that the contract be cancelled, and that the work be re-advertised for new bids based on specifications containing a schedule of prevailing wages presumably higher than those paid by the present contractor.

It appears that both the Board and the contractor failed to comply with the provisions of KRS 337.510 to 337.540. The principal sections with which we are immediately concerned provide as follows (our italics):

KRS 337.510. "Before advertising for bids or entering into any contract for construction of public works, every public authority shall ascertain the prevailing rates of wages of laborers, workmen, mechanics, helpers, assistants and apprentices for the class of work called for in the construction of such public works in the locality where the work is to be performed. This schedule of wages shall be attached to and made a part of the specifications for the work and shall be printed on the bidding blanks and made a part of every contract for the construction of public works."

KRS 337.520. "The wages paid for a legal day's work to laborers, workmen, mechanics, helpers, assistants and apprentices upon public works shall not be less than the prevailing wages paid in the same trade

or occupation in the locality. *The public authority shall establish prevailing wages at the same rate that prevails in the locality under collective agreements or understandings between bona fide organizations of labor and their employers at the date the contract for public works is made if there are such agreements or understandings in the locality applying to a sufficient number of employes to furnish a reasonable basis for considering those rates to be the prevailing rates in the locality. * * *,,*

The issue in the case is whether not the last quoted section is an unconstitutional delegation of legislative power to private persons, associations, or corporations, contravening sections 27, 28 and 29. At the outset it must be conceded the Legislature itself may validly fix minimum wage rates to be paid laborers on public works. Still further, it is settled the Legislature may properly grant to political subdivisions or public bodies the discretionary power of fixing fair or prevailing wages. 11 Am. Jur., Constitutional Law, Section 223; Young v. Willis, 305 Ky. 201, 203 S. W. 2d 5; Hilton v. Board of Education, 51 Ohio App. 336, 1 N. E. 2d 166; Metropolitan Water District v. Whitsett, 215 Cal. 400, 10 P. 2d 751; State v. Anklam, 43 Ariz. 362, 31 P. 2d 888.

While apparently appellees have no quarrel with the above principles, they maintain the statute goes one step further and requires the public authorities to accept, without exercising any discretion, wage rates fixed by private contracts between labor organizations and employers. They rely principally upon the cases of Wagner v. City of Milwaukee, 177 Wis. 410, 188 N. W. 487; Revne v. Trade Commission, Utah, 192 P. 2d 563, 3 A. L. R. 2d 169; Carter v. Carter Coal Company, 298 U. S. 238, 56 S. Ct. 855, 80 L. Ed. 1160; and Lowery v. City of Lexington, 116 Ky. 157, 75 S. W. 202. All of these cases recognize, and the principle is sound, that neither the Legislature nor any political subdivision possessing legislative power may delegate the exercise of such power to private persons or corporations.

In the City of Milwaukee case, an ordinance provided that skilled laborers employed on city works should be paid not less than the prevailing wage, such

wage to be determined as that paid to members of any regular or recognized labor organization. The Wisconsin Supreme Court declared this ordinance invalid on the ground that the common council had no discretion in determining the prevailing wage, and it had delegated the exercise of its judgment to an independent private organization. We are not entirely committed to the soundness of the Court's reasoning in that case, but are convinced it is distinguishable upon two grounds: (1) at the time of the decision (1922), the wage scale paid labor union members did not constitute a generally accepted reasonable standard, and (2) the Court construed the ordinance as depriving the public authority of any exercise of discretion.

In the other cases relied upon by appellees the legislating authority had clearly abdicated its function of law-making by shifting to private groups the power of fixing prices, fixing wages and passing upon bids for public works. In each case the public interest had been subordinated to what might have been adverse private interests.

Turning to the statute here involved, we find that the public authority itself is required to ascertain the prevailing wage rates. In the eyes of the Legislature, wages paid under agreements between labor organizations and employers constitute a fair criteria of reasonable compensation for different types of work. It will be noted these wages are agreed upon as the result of bargaining between labor on one side and the employer on the other. As pointed out in Long Island Railway Company v. Department of Labor, 256 N. Y. 498, 177 N. E. 17, prevailing wages ordinarily are governed by the law of supply and demand, and the competitive market will tend to establish a fair wage. Other reasons for accepting as a fair standard wage rates established in similar industries are pointed out in that opinion.

Under the statute involved the duty is imposed upon the public authority to ascertain and fix the prevailing wages in any particular locality. The standards set up are the collective agreements between labor organizations and employers existing at the date the public contract is made. The statute does not stop there. The

public authority is only required to accept those wage rates if such agreements apply to a sufficient number of employees "to furnish a reasonable basis for considering those rates to be the prevailing rates in the locality." Thus the public authority is vested with the ultimate determination of what shall be the prevailing wage. This discretionary power may properly be granted to a governmental agency administering the law. See Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828.

The statute involved fixes the legislative policy. It establishes a standard, which we cannot say is unreasonable, to guide the public authorities. The public body is vested with a discretion in determining the reasonable prevailing wage which must be included, if any must be included, in the contract. These three factors being present, we find the Legislature has not delegated the exercise of its legislative function to private persons or interests.

The wisdom of this type of legislation may be debatable, but that is not a judicial question. If this statute increases the cost of public works which the taxpayer must pay, if it has an adverse effect upon competitive bidding, or if it aids the labor union movement, these are matters addressed to the judgment of the elected representatives of the people. Our consideration of the case must be confined to the constitutionality of the law and not its policy. Any doubt must be resolved in its favor. In our opinion the statute is not unconstitutional on the ground asserted.

The lower Court apparently based its determination that the contract was valid upon its finding that the statute was unconstitutional. Since we have decided this latter conclusion was erroneous, we do not consider it necessary or proper to pass upon the contract or its status before the lower Court has had a further opportunity to reconsider it.

In view of the unusual emergency circumstances presented, it is our hope the interested parties and the Court below may work out some reasonable solution which will not too greatly interfere with the public interest in having the new school building erected at an early date. Without deciding the question, it seems to

us that the contractor was not guilty of violating the statute, and the action of the Board was not wilful.

For the reasons stated, the judgment is reversed for such further proceedings as may be necessary and proper consistent with this opinion.

Judge Thomas dissents.

I am unable to agree with the majority of the Court regarding the constitutionality of the statute in question, and will briefly state why.

Though I do not believe it to be an eternally settled proposition that the Legislature may expend or authorize the expenditure of public moneys for the benefit of a special class of persons, I do take issue with the majority on the question of whether or not the law involved constitutes a valid delegation of legislative authority to a particular private group within a class. With all due respect to labor unions, it seems to me that the law in question goes entirely too far in requiring public authorities to accept the terms of employment fixed by these organizations without having the right to determine their reasonableness.

My construction of the law is somewhat different from that of my colleagues. Nothing in the statute gives the public authority any right or power or discretion to pass upon the reasonableness of a prevailing wage in any particular locality. It is true the public authority may determine whether or not a sufficient number of employees are affected by collective agreements between labor organizations and employers, but that only permits a finding as to whether or not a prevailing wage exists and does not permit a discretionary determination that such wage is fair to either party to a labor contract under the particular circumstances involved.

The majority are of the opinion that the statute sets up a reasonable standard. I am unable to find such in the statute, unless we may say that any wage rate established by a labor union, regardless of the methods used by it to enforce the payment of such wage, is ipso facto reasonable. It is to be noted that the public authority must establish the same rate which prevails under labor union contracts. It may not take into consideration wages paid under non-union contracts. It

may not take into consideration the fact that the wage rate was promoted by a powerful union or a weak one, or that the contracts between the labor organizations and the employers were negotiated in Daviess County or New York or Chicago. It seems to me these are matters which should be considered by the public authority if it is to exercise a discretion properly delegated to it by the Legislature. Fact finding by public agencies, public bodies, or administrative agencies is perfectly proper if they are given the right to determine pertinent facts which have a bearing upon the details of the law to be invoked, but under the statute involved, the only fact to be found by the public authority is the existence of labor union contracts covering a sufficient number of employees to indicate they are the prevailing union rates.

It is conceivable that a powerful union in a particular locality may by organized strikes and even organized violence have established an unusually high wage rate for a particular industry in the particular community. The public authority cannot go behind the contract establishing these rates, nor may it decide that the prevailing rates paid under non-union contracts establish an adequate minimum compensation for laborers in the vicinity.

In my opinion the principle announced in the case of Wagner v. City of Milwaukee, 177 Wis. 410, 188 N. W. 487 is sound. In the briefs filed for appellants, and on behalf of the American Federation of Labor and other organizations interested in upholding the constitutionality of this act, no case to the contrary has been cited nor has an attempt been made to distinguish this case. The facts are substantially identical with those involved here except that the prevailing wage provision appeared in an ordinance rather than a statute. The Supreme Court of Wisconsin had this to say, 177 Wis. 410, 188 N. W. at page 489:

"Upon the second of these questions we see no escape from the conclusion that by the terms of the ordinance in question and the resolution passed in accordance therewith there is manifest a declaration by the common council that in fixing a minimum wage scale it will and does adopt and establish as such scale and

prevailing wage. the rate paid to the members of any regular and recognized organization of the skilled laborers for each particular class of labor. The only exception recognized as to such being the standard is in the case where to any particular class of labor the city itself is then paying a higher scale of wages.

"This in effect declares that some body or organization outside of, and independent from, the common council, and other than a state or local administrative body, shall exercise the judgment required to fix and determine a prevailing wage scale. It amounts to nothing less than a surrender by the members of the common council of the exercise of their independent, individual judgments in the determination of a matter of legislative concern and an agreement that, if they act upon the subject at all, the determination of such outside body rather than their own shall control. There is no discretion left with the common council as to the scale; if it fixes any, it must fix that scale determined by the unions. The action and judgment of determining the wage scale is that of the unions, not that of the common council. · The power to exercise such legislative function is exclusively in the common council, and their duty and obligation as representatives of the people to so exercise it is coextensive with the power itself. * * *

"If one common council can lawfully bind itself and its successors to accept the judgment and discretion of an outside body in one particular instance representing organized labor, another common council may claim an equal right to bind itself and its successors to accept a scale for a maximum wage to be fixed by some other outside body which may be as much interested in keeping the returns to labor down as labor organizations are to keep them up. If the power to do the former is recognized as legal and constitutional, the right to do the latter cannot be denied. The language, the reason, and the logic of repeated former rulings of this court and of other courts plainly declare that any attempted vesting of the determination of such a legislative question in an outside body is an abdication, and not an exercise, of the legislative discretion that exclusively belongs to the common council itself."

The case of Carter v. Carter Coal Company, 298 U. S. 238, 56 S. Ct. 855, 80 L. Ed. 1160, involved the

"Bituminous Coal Conservation Act of 1935" which authorized a certain percentage of coal producers and miners to fix minimum wages for particular districts. The Court stated, 298 U. S. at page 311, 56 S. Ct. at page 873, 80 L. Ed. 1160: "The power conferred upon the majority is, in effect, the power to regulate the affairs of an unwilling minority. This is legislative delegation in its most obnoxious form; for it is not even delegation to an official or an official body, presumptively disinterested, but to private persons whose interests may be and often are adverse to the interests of others in the same business."

In the concurring opinion of Mr. Chief Justice Hughes, it is stated, 298 U. S. at page 318, 56 S. Ct. at page 876, 80 L. Ed. 1160: "The government invokes the analogy of legislation which becomes effective on the happening of a specified event, and says that in this case the event is the agreement of a certain proportion of producers and employees, whereupon the other producers and employees become subject to legal obligations accordingly. I think that the argument is unsound and is pressed to the point where the principle would be entirely destroyed. It would remove all restrictions upon the delegation of legislative power, as the making of laws could thus be referred to any designated officials or private persons whose orders or agreements would be treated as 'events,' with the result that they would be invested with the force of law having penal sanctions."

I believe the general principles stated and followed in the above two cases have been recognized as sound in practically all jurisdictions, including our own. See Lowery v. City of Lexington, 116 Ky. 157, 75 S. W. 202, and recent note in 3 A. L. R. 2d 169.

There are other considerations which I believe fortify my position that this statute improperly delegates legislative power to private organizations. Obviously it has the effect of amending the provisions of KRS 162.070, which provides that contracts for the erection of school buildings shall be awarded by boards of education to the lowest and best responsible bidder. Now the contract may only be let to such bidder if he will pay the wage scale fixed by bargaining agreements be-

tween labor unions and employers. This has a vicious tendency not only to require the expenditure of more of the taxpayer's money but to eliminate the non-union contractor. In addition, it is class legislation which, by fixing the prevailing wage at the labor union rate, will tend to force all working people into labor unions because they cannot enter into an agreement with a contractor on public works for a lesser wage which would enable them to compete with the members of the labor union.

If the Federal Congress and the state legislatures wish to pass laws within constitutional limits favorable to labor unions, that is a matter of legislative policy which courts should enforce. The responsibility then rests on the legislative body and its elected representatives. To shift the determination of the public interest to private organizations themselves is for the legislative body to abdicate its power and avoid its responsibility.

I wish to make it clear that I see no constitutional objection to the Legislature fixing or delegating to a public body the determination of what prevailing wages shall be paid on public works. The vice I find in the present statute is that it delegates such determination to private industry. For this reason I must respectfully dissent.