**CITY OF PADUCAH et al., Appellants,**

**v.**

**JOHNSON BONDING COMPANY, INC., et al., Appellees.**

**JOHNSON BONDING COMPANY, INC., et al., Cross-Appellants,**

**v.**

**CITY OF PADUCAH et al., Cross-Appellees.**

Court of Appeals of Kentucky.

Feb. 1, 1974.

Rehearing Denied Sept. 6, 1974.

**482**

W. David Denton, Corp. Counsel, Paducah, for appellants and cross-appellees.

E. W. Rivers, Melton & Rivers, Paducah, for appellees and cross-appellants.

GARDNER, Commissioner.

In an action brought by the Johnson Bonding Company, Inc., and others, against the City of Paducah, and others, the McCracken Circuit Court adjudged that parts of a Paducah ordinance regulating bail bondsmen were invalid and parts were valid. All parties appeal from the portions of the judgment adverse to them.

One of the main issues is whether the ordinance contravenes the provisions of Kentucky Revised Statutes, Chapter 304, Subtitle 34, an Act regulating bail bondsmen. The Johnson Bonding Company contends that some of the provisions of the ordinance are invalid because they are inconsistent with Chapter 304, some are invalid because they duplicate provisions of Chapter 304, and some are invalid because they contravene general laws and the Kentucky Constitution. The city contends that the ordinance is valid and refers to Johnson v. City of Paducah, Ky., 461 S.W.2d 357 (1970), where this court decided that Johnson Bonding Company's business was subject to regulation by the City of Paducah. The court recognized that by its inherent nature the bail-bonding business is subject to police-power regulation. The case was remanded to the circuit court for further proceedings in the light of the changed legal status of the parties caused by the subsequent legislation (KRS Chapter 304) whereby the state entered the field of regulating bail bondsmen. Thereafter the city enacted a new ordinance which is the subject of this controversy. The city also relies on KRS 304.34–140 which provides:

"This subtitle shall not supersede or prevent the adoption of a city ordinance that imposes on bail bondsmen or the bail bond business additional requirements that are not inconsistent with this subtitle."

It might be asked at the outset, by what authority may the General Assembly delegate legislative functions to cities in view of section 29 of the Kentucky Constitution which provides, "The legislative power shall be vested in a House of Representatives and a Senate, which, together, shall be styled the 'General Assembly of the Commonwealth of Kentucky.'" We do not find where the constitution specifically recites that the General Assembly may delegate powers to a city, neither do we find where the constitution precludes such delegation. It is known, of course, that such delegation is universally practiced. The statutes are replete with instances of delegation of authority to cities and counties.[1] The general proposition is stated in 16 Am Jur 2d, Constitutional Law § 251 as follows:

> "The constitutional maxim which prohibits the legislature from delegating its power to any other body or authority is not violated by vesting municipal corporations with certain powers of legislation as to matters purely of local concern of which the parties immediately interested are supposed to be better judges than the legislature."[2]

Section 251 goes on to say:

> "The view generally adopted is that a grant of power to a municipal corporation to legislate by ordinance on enumerated subjects connected with its municipal affairs is in addition to the power of making bylaws, which is incidental to the creation of a corporation, and that the legislature may actually delegate a portion of its power to a city government."

 We accept the general proposition that under its police power, as recognized by this court in Johnson v. City of Paducah, supra, and under KRS 304.34–140, a city is authorized to regulate bail bondsmen. We shall examine the various sections of the regulating ordinance to determine if they are inconsistent with statutory or constitutional law, with special attention given to Chapter 304.

 Johnson argues that section 6–18, pertaining to revocation of license, is inconsistent with KRS 304.34–100 under which the State Commissioner of Insurance "may deny, suspend, revoke or refuse to renew any license issued under this subtitle," and KRS 304.34–100 where the procedure therefor is outlined. Johnson does not point out however where the specific inconsistency is and we find none. Johnson argues further that if the city revoked a license issued by the city, such an act would in effect nullify the authority of the commissioner to decide whether the licensee could continue to operate its business under a state license. In City of Owensboro v. Smith, Ky., 383 S.W.2d 902 (1964), we upheld a city ordinance which prohibited the licensing by the city of a pinball machine for which a federal gaming stamp had been obtained, and we rejected the argument that the ordinance conflicted with KRS 436.230(5) which exempted operators of pinball machines from prosecution under the gambling statute. We believe the state has delegated the right to a city to issue and revoke bail-bond licenses by KRS 84.190(1) which provides, "The general council may, by ordinance: (1) License, tax and regulate all trades, occupations and professions;" (which we interpreted in Johnson v. City of Paducah, supra, to authorize the licensing of a bail-bond business by a city) and by KRS 304.34–140, which authorizes the city to impose on bail bondsmen "additional requirements that are not inconsistent with this subtitle." If the city has the right to require a license for conducting a business within the city, it

---

1. Examples are: KRS Chapters 93 and 94 relating to public works in cities; KRS Chapter 95 relating to city police and fire departments; KRS Chapter 96 relating to public utilities; KRS Chapter 97 relating to parks and recreation centers; KRS Chapter 100 relating to zoning; KRS Chapter 106 relating to waterworks.

2. Cases of the United States Supreme Court and of 31 state courts are cited by American Jurisprudence as supporting this statement.

goes without saying that it would have the right to revoke the license. We believe the trial court erred in adjudging section 6–18 invalid.

Section 6–23 was attacked by Johnson on the ground that its provisions were duplications of the provisions of KRS 304.-34–070(3) and therefore invalid as not being "additional requirements" authorized by KRS 304.34–140. Section 6–23 requires the bondsman to furnish the client with an itemized receipt showing the character of service and the amount and nature of the consideration. It also requires the bondsman to furnish the city treasurer with a copy of the receipt and, in cases arising out of the city police court, a copy is to be furnished the clerk of the court. KRS 304.34–070(3) contains similar provisions regulating receipts, although it does not require that copies be furnished the city treasurer. Whether section 6–23 "duplicates" a provision of the statute or not, we believe it is an "additional" requirement. In a true sense any requirement of the ordinance is in addition to those of the statute. We believe that the provisions of section 6–23 provide reasonable means of determining if the bondsman is complying with other provisions of the ordinance, especially section 6–22(4) dealing with rates, and, in fact are additional requirements within the meaning of KRS 304.34–140. We consider section 6–23 valid.

Section 6–24 entitled "Requiring collateral to guarantee appearance," section 6–28 entitled "Unlawful compensation from third persons," section 6–29 entitled "Payment for business referrals prohibited," section 6–34 entitled "Execution of bond," section 6–35 entitled "Failure to pay forfeiture," and section 6–36 entitled "Books and records to be maintained" were determined by the trial court to be duplications of provisions of the statute and therefore invalid. For the reasons discussed previously we consider that although the requirements might be considered duplications, they are in addition to the provisions

of the statute, and are not for that reason invalid.

Section 6–22(4) as amended directs the city treasurer to determine the "prevailing" rates charged by professional bondsmen in all second-class cities in the Commonwealth from the rate schedules filed with the Commissioner of Insurance by all bondsmen doing business in such cities. A bondsman doing business within the City of Paducah may not charge a sum in excess of nor less than the rates determined by the city treasurer. The treasurer shall notify all bondsmen doing business within Paducah of the determination, and any bondsman may, "within ten days after the determinations of rates have been made, file an appeal with the City Clerk, and the Board of Commissioners of the City of Paducah shall thereafter within seven days conduct a hearing into the matter of rates and shall make its own determination of justifiable rates on the basis of evidence presented, taking into consideration such factors as the cost of doing business, the loss ratio, the number of forfeitures, the amounts of forfeitures, minimum cost for preparing and writing any size bond, differences in risks for residents and nonresidents of Paducah and McCracken County, and Kentuckians and non-Kentuckians, and any other factors which tend to justify a professional bail bondsman's request for any particular rates. Any rates thus established by the Board of Commissioners shall be subject to judicial review as are rates determined and set by any administrative body."

The section further provides that the provisions for determining rates shall cease to be carried out by the City of Paducah "at any time any agency of the Commonwealth of Kentucky or the United States of America assumes the authority and responsibility for establishing rates for bail bonds to be written in the City of Paducah."

The section also provides, "As used herein the term 'prevailing' shall mean

most common, prevalent or frequent fees for different or all size bonds, and in the event there is no prevalent fee for all size bonds or for various size bonds or for minimum fees, the City Treasurer is authorized to determine averages for each fee category as was submitted to the Kentucky Commissioner of Insurance by any bondsman regarding proposed Paducah rates."

■ The trial court decided that this provision was invalid because the city had no authority to regulate premium rates. It is generally recognized that regulation of bond premiums comes within the purview of the police power of a legislative body. See State v. Fishman, 2 Conn.Cir. 83, 194 A.2d 725 (1963); Jackson v. Beavers, 156 Ga. 71, 118 S.E. 751 (1923). For related discussion see 13 A.L.R.3d 618, and 62 C. J.S. Municipal Corporations § 143. As was determined in Johnson v. City of Paducah, the bail-bonding business is subject to police-power regulation.

■ It might be argued that the city's directing the treasurer to determine the prevailing rates from the list filed with the insurance commissioner was an unlawful delegation of power to other cities to fix the rates to be charged in Paducah. It appears to us that this provides a reasonable standard for determining what the rates should be. We believe that the means to be employed may be accepted as prima facie meeting the test of being fairly designed for the purpose of determining fair premium rates. See Commonwealth v. Kroger Company, Ky., 503 S.W.2d 722 (decided October 12, 1973), where we approved the use by the Property Evaluation Administrator of a formula in determining the value of store equipment for tax purposes, and the Fayette County Board of Supervisors v. O'Rear, Ky., 275 S.W.2d 577 (1954), where we said, "It is our opinion that an assessment cannot be held invalid merely because of the method employed in making it, so long as the method is fairly designed for the purpose of reaching, and reasonably tends to reach, an approximation of the fair voluntary sale price."

In Baughn v. Gorrell & Riley, 311 Ky. 537, 224 S.W.2d 436 (1949), the court considered the question of whether the statute providing that public authorities should require contractors to pay the prevailing wage rates as called for in the construction of public works in the locality where the work was to be performed was valid. It was argued that by the statute's reciting that the prevailing rate should be established in accordance with the rates accepted under collective agreements between labor organizations and employers in the locality, it in effect permitted labor organizations and employers to fix the rates rather than for the public authorities to fix them. The court did not accept this argument and said:

"In the eyes of the Legislature, wages paid under agreements between labor organizations and employers constitute a fair criteria of reasonable compensation for different types of work. It will be noted these wages are agreed upon as the result of bargaining between labor on one side and the employer on the other. As pointed out in Long Island Railway Company v. Department of Labor, 256 N.Y. 498, 177 N.E. 17, prevailing wages ordinarily are governed by the law of supply and demand, and the competitive market will tend to establish a fair wage."

The court in Kugler v. Yocum, 69 Cal.2d 371, 71 Cal.Rptr. 687, 445 P.2d 303 (1968), was confronted with the same issue, and held that there was not an unlawful delegation of power. An ordinance of the City of Alhambra provided that the salaries of the members of the fire department should be not less than those of corresponding members of the fire departments of the City of Los Angeles and the County of Los Angeles. The ordinance provided that the City Manager should determine the existing monthly salaries of each classification of comparable grades or ranks of the other named fire departments. The court said:

"In the instant case, the adoption of the proposed ordinance, * * * will

constitute the legislative body's resolution of the 'fundamental issue.' Once the legislative body has determined the issue of policy, i. e., that the Alhambra wages for firemen should be on a parity with Los Angeles, that body has resolved the 'fundamental issue'; the subsequent filling in of the facts in application and execution of the policy does not constitute legislative delegation."

We are of the opinion that the means of determining the rate to be charged in the instant case provided a reasonable standard and there was not an unlawful delegation of authority.

It is noted that as a simple means of obtaining redress the dissatisfied bondsman may appeal to the board of commissioners (the governing body of the city) for a de novo hearing to be held to determine justifiable rates based on the pertinent factors set forth in the ordinance as quoted above. There is the further right of appeal to the courts.

It is also noted that the ordinance provides that if an agency of the state or of the federal government establishes rates for bail bonds in Paducah the city will acquiesce and cease to enforce its rate determination. Whether that provision is necessary or even apropos, we are not called on to decide but it does evince the policy of the city to conform to the authority of the legislature as expressed by the Commissioner of Insurance.

We believe the trial court erred in adjudging as invalid the following sections: section 6–12(2), which requires the bondsman to furnish the name, age and residence of each person employed by him in the bail-bond business; section 6–22(5), which gives authority to the city treasurer to inspect and audit records; section 6–31 entitled "Payment of fines by bondsmen prohibited"; section 6–32 entitled "Employment of solicitors and runners prohibited"; and section 6–37 entitled "Conducting business in the City Hall." Each of these provisions has a sufficient relationship to the purpose of the ordinance, without the infirmity of being unreasonable or arbitrary, to be upheld as valid. The law raises a presumption in favor of the validity of an ordinance and the burden is on the person attacking it to show its invalidity. See City of Louisville v. Puritan Apartment Hotel Co., Ky., 264 S.W.2d 888 (1954).

We agree with the trial court that section 6–30, which prohibits the bondsman from influencing the police court and other public officials of a city, is vague and therefore invalid.

Johnson has attacked section 6–38, providing for criminal penalties of $50 to $500 fines or 10 to 50 days' imprisonment, on the ground that it provides for lesser punishment than Chapter 304 which carries penalties of fines of not more than $500 or imprisonment of not more than six months. Section 168 of the Kentucky Constitution provides: "No municipal ordinance shall fix a penalty for a violation thereof at less than that imposed by statute for the same offense." We do not find where any offense denounced by the ordinance is the "same offense" included in the statute.

We are of the opinion that the trial court correctly adjudged as valid section 6–25 entitled "Entering jail, police stations or other places of detention," and section 6–27 entitled "Not to solicit business in or near court room." These sections do not appear to be unreasonable or arbitrary.

It is our opinion, in summary, that all of the ordinance is valid except section 6–30.

The judgment is affirmed in part and reversed in part with directions to enter a judgment in conformity with this opinion.

All concur except OSBORNE, C. J., who would affirm the judgment.

Separate concurring opinion filed by STEINFELD, J.

STEINFELD, Justice (concurring).

I concur in the opinion except for that part which holds Section 6–22(4) valid. It

is my opinion that allowing other cities, by their ordinances, to establish the Paducah rate to be charged by professional bondsmen is an impermissible delegation of legislative power. Other cities have no more right to establish these rates than would an individual or a private corporation and, of course, they could have none. Tilford v. Belknap, 126 Ky. 244, 103 S.W. 289; Kohler v. Benckart, Ky., 252 S.W.2d 854; 56 Am. Jur.2d, Municipal Corporations, Sec. 197.

Such cases as Baughn v. Gorrell & Riley, 311 Ky. 537, 224 S.W.2d 436, are inapplicable. They deal with the operation of government and are unrelated to the exercise of the police power. They do not adjudicate issues of the effect on the public wrought by the delegation of municipal power. Cf. Kohler v. Benckart, supra.

The right granted the professional bondsmen to protest cannot save this section. The public pays the premiums and it has no opportunity to question the rate.

I would declare Section 6–22(4) void.