James C. JOHNSON, Jr., Appellant,

v.

CITY OF PADUCAH et al., Appellees.

Court of Appeals of Kentucky.

Dec. 11, 1970.

Tom Garrett, Paducah, for appellant.

William Howerton, Paducah, for appellee.

REED, Judge.

Paducah, a second-class city, enacted an ordinance which undertook to regulate the bail-bond business carried on within the city. James C. Johnson, Jr., an individual conducting a bail-bond business in Paducah, instituted this action against the city in the circuit court; he sought a declaratory judgment that the regulatory ordinance was unconstitutional and void. The circuit court declared that certain portions of the ordinance were invalid and unenforceable. Both Johnson and Paducah agree that this portion of the judgment is correct. The trial court sustained the validity of other portions of the ordinance; Johnson appeals from that determination. We affirm the circuit court's adjudication that Johnson's business was and is subject to regulation by Paducah.

The declaratory judgment that is the subject of this appeal was entered in August 1969. While the appeal was pending and after the briefs were filed, the General Assembly enacted KRS Chapter 304 which became effective June 18, 1970. By this statute the legislature declared the need for comprehensive regulation of the bail-bond business on a state-wide basis. The state Department of Insurance was delegated the authority to regulate the activity and was authorized to promulgate and enforce regulations consistent with the legislation to effect the legislative purpose. Under the circumstances, we are persuaded that this change in the legal status of the parties requires that we remand the case for a new determination concerning certain aspects of the controversy so that a declaration that actually terminates the dispute can be effected.

When Paducah enacted its licensing and regulatory ordinance in 1965, KRS 84.190 was the source of legislative authorization for such an enactment. By its plain language, KRS 84.190(1) authorizes a second-class city (Paducah) to license and regulate *all* trades and occupations; subsections (2), (3) and (4) of this same statute permit such a city to license, regulate, or *suppress* specified trades and occupations; the bail-bond business is not so specified in these subsections. Johnson argued in the circuit court that the specifications contained in the subsequent subsections limited the inclusive authorization contained in the initial subsection of KRS 84.190.

It seems to us, however, that this argument overlooks the significance of the word "suppress." It is conceded for all practical purposes, as it must be, that the business of acting as a bail bondsman for those persons accused of crime has sufficient impact on public welfare to be subject to regulation by exercise of the police power of government whether one

is influenced by a restrictive or expansive interpretation of the scope of the power. KRS 84.190 by its language permits the city to license and regulate all trades or occupations. The city is ostensibly authorized to suppress only specifically enumerated trades or occupations. Paducah's ordinance undertook only to license and regulate; it did not undertake to suppress. By its inherent nature the bail-bond business is subject to police power regulation. KRS 84.190 effectively authorized the ordinance so far as this particular business activity is concerned.

Johnson's argument about this phase of the controversy is rendered completely academic by the subsequently adopted legislation. KRS Chapter 304 regulates the bail-bond business singly and specifically on a state-wide basis. Subsection 15 of this new statute establishes that the regulation by the Department of Insurance is not to be considered as a complete preemption of the right to regulate the activity. On the contrary, the statute states that state regulation shall not supersede or prohibit regulation by city ordinance where the requirements of such an ordinance are "in addition to and not inconsistent with" state regulation. Thus the primary function of regulation of the bail-bond business is vested in the state Department of Insurance, but its regulatory activities may be supplemented by regulatory activity by the city that is additional to and consistent with state action in the field.

The 1965 Paducah ordinance provided for a regulatory plan to several features of which Johnson directed legal attack. For example, the ordinance regulates only individuals or partnerships that engage in the bail-bond business; corporations are excluded. Johnson asserts that this constitutes an unreasonable and discriminatory classification and thereby violates the uniformity requirements of our state Constitution as provided in sections 171 and 181 of the document. KRS Chapter 304 makes no such classification, but extends regulation to all individuals and corporations engaged

in the activity of acting as professional bail-bond sureties.

The ordinance prescribes a license fee that is greater in amount than is the fee prescribed for a state license in KRS Chapter 304. The ordinance prescribes a fee schedule which limits charges that a bondsman may charge. KRS Chapter 304 vests authority to regulate such charges in the Department of Insurance. Johnson also objects to other requirements of the ordinance which concern the keeping of records and the reporting of bail-bond transactions. KRS Chapter 304 contains requirements in this area. We are unadvised whether state regulations in these areas have also been formulated.

It appears to us that neither party to this declaratory judgment proceeding was deprived of any vested rights by the subsequent enactment of KRS Chapter 304. The state through its Department of Insurance surely has a direct and, indeed, a paramount interest in the legal questions presented. Since Paducah acted to license and regulate when the state was not active in the field, we are unadvised whether Paducah now considers state regulation adequate or whether it contends otherwise. Whether Paducah's regulatory plan is "additional to" and "consistent with" the state's regulatory plan can only be determined when the state's plan is known. It is also possible that factual issues, the determination of which would be necessary to properly declare the legal and constitutional rights and duties of the parties and of the state, could be presented if bi-partite regulation by the state and the city is to be attempted. Therefore, the case is not in posture for rendition of a declaration of rights which will terminate the controversy and make certain the areas of uncertainty.

■ We have determined to remand the case to circuit court; this manner of disposition is expressly provided for in our declaratory relief procedural statute, KRS 418.065. We conclude that this appellate disposition under the circumstances present

is supported by text authority, 5B C.J.S. Appeal and Error §§ 1836 and 1841, and by our decisions in situations which we consider analogous in such cases as Defoe v. Perry County, Ky., 293 Ky. 487, 169 S.W.2d 309 (1943) and Board of Education of Lawrence County v. Workman, Ky., 256 S.W.2d 528 (1953).

After return of the case to circuit court, the pleadings may be amended, additional parties may be added to the proceeding, and evidence may be taken, if necessary, in the light of the changed legal status of the parties caused by the subsequent legislation.

So much of the judgment which declares that Paducah has a right to regulate Johnson's bail-bond business is affirmed; the remaining declarations recited in the judgment which are the subject of this appeal are vacated and set aside; the cause is remanded to the circuit court for further proceedings consistent with this opinion.

All concur.